IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAMUEL CARTER, #A0247045, <br><br> Plaintiff, <br><br> vs. <br><br> PRISON DIRECTOR, *et al.*, <br><br> Defendants. | CIVIL NO. 23-00204 DKW-RT <br><br> ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Samuel Carter's Prisoner Civil Rights Complaint brought pursuant to 42 U.S.C. § 1983.[1]  ECF No. 1.  Carter alleges that Defendants violated his Eighth Amendment rights by housing him with two inmates who should have been quarantined due to COVID, and his First Amendment rights by failing to investigate his reason for not submitting a timely grievance.[2]  *Id.* at 5–7.  After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the Complaint with partial leave to amend.  If Carter wants this action to proceed, he must file an

---

[1] Carter is currently incarcerated at the Oahu Community Correctional Center.  *See* ECF No. 1 at PageID.1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0247045"; and select "Search") (last visited May 25, 2023).

[2] Carter names as Defendants the "Department of Public Safety, Director," the "Warden of OCCC," and two "officer[s] on duty around September 2022."  ECF No. 1 at 1–2.

amended pleading that cures the noted deficiencies in his claims on or before June 16, 2023.  In the alternative, Carter may inform the Court in writing on or before June 16, 2023 that he would like to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), in which case such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I. <u>STATUTORY SCREENING</u>

The Court must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis.  28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints."). During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[3]

On or about September 19, 2022, two inmates moved into a cell that Carter had been sharing with one other inmate.  ECF No. 1 at 5.  According to Carter, the two new inmates moved into his cell four days before their COVID quarantine periods had ended.  *Id.*  On the same day, Carter tested positive for COVID-19.

---

[3]Carter's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

ECF No. 1-1 at 1.[4]  According to Carter, he contracted the virus from one or both of his new cellmates.  ECF No. 1 at 5.

Carter asked a "workline" inmate for a grievance form on September 19, 2022.  ECF No. 1 at 7.  The inmate told Carter that no grievance forms were available.  *Id.*

Carter signed the Complaint on April 28, 2023, and the Court received it on May 5, 2023.  *Id.* at 8.  Carter alleges that unnamed "officers on duty" violated his Eighth Amendment rights by housing him with inmates before their quarantine periods ended.  *Id.* at 5.  He further alleges that the "Warden" and "Prison Director" failed to "implement a successful isolation plan."  *Id.* at 6.  Finally, Carter alleges that an unnamed "grievance officer" violated his First Amendment rights by "failing to investigate [his] valid excuse" for not filing a timely grievance form.  *Id.* at 7.  Carter seeks $700,000 in damages.  *Id.* at 8.

### III.  DISCUSSION

### A.    Legal Framework for Claims under 42 U.S.C. § 1983

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the

---

[4]Carter attached to the Complaint a "Laboratory Report" showing that a sample was collected at 9:15 a.m. on September 19, 2022, and a positive result returned at 11:15 p.m. that night.  ECF No. 1-1 at 1.  Although the name on the report is "Johnson, Tony," Carter states that this is an alias of his.  ECF No. 1 at 5.

Constitution.'"  *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting

42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C.

§ 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws

of the United States was violated; and (2) that the alleged violation was committed

by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

(1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

## B.     Eleventh Amendment

Carter seeks only money damages, but he names in both their individual and

official capacities the OCCC's warden and two unidentified officers.  ECF No. 1 at

2, 8.  Carter also names as a defendant the DPS Director, but he does not say

whether that official is named in his individual or official capacity.  ECF No. 1 at

1.

"The Eleventh Amendment bars suits for money damages in federal court

against a state, its agencies, and state officials acting in their official capacities."

*Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations

omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03

(1984).  It does not bar official-capacity suits against state officials for prospective

relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v.

Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of

State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages

against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Because Carter seeks only money damages in this action, any claims against Defendants in their official capacities are barred by the Eleventh Amendment and, therefore, are DISMISSED with prejudice.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity.").  The Eleventh Amendment does not bar Carter's claims for money damages against Defendants in their individual capacities.

## C.     Causation

In Count I, Carter alleges that two unnamed officers violated the Eighth Amendment by moving two inmates into his cell four days before their quarantine periods ended.  ECF No. 1 at 5 –6.  On the same day that the inmates moved into Carter's cell, he tested positive for COVID.  *Id.* at 5; ECF No. 1-1 at 1.

"In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury."  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (citation omitted); *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020) (same).  "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  *Harper*, 533 F.3d at 1026.  A defendant's "conduct is an actual cause

of . . . injury only if the injury would not have occurred 'but for' that conduct."

*White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) (citation omitted).  "The

proximate cause question asks whether the unlawful conduct is closely enough tied

to the injury that it makes sense to hold the defendant legally responsible for the

injury."  *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1076 (9th Cir. 2018).

"Proximate cause is said to depend on whether the conduct has been so significant

and important a cause that the defendant should be legally responsible."  *Id.*

(internal quotation marks and citation omitted).  "[T]he touchstone of proximate

cause in a § 1983 action is foreseeability."  *Id.* (internal quotation marks and

citation omitted).

     According to Carter, he tested positive for COVID-19 on the same day that

the two inmates moved into his cell.  ECF No. 1 at 5; ECF No. 1-1 at 1.  Carter has

not plausibly alleged, however, that moving the two inmates into his cell was the

actual cause of his COVID infection.  Carter does not allege that either of the new

inmates ever tested positive for the virus and, if they did, when this occurred.

Although Carter submitted a laboratory report stating that his test sample was

collected at 9:15 a.m. on the morning of September 19, 2022, nothing suggests that

Carter was exposed to the new inmates before that time.  *Id.*  Indeed, Carter does

not say what time the two inmates moved into his cell or how long he was exposed

to them.  Moreover, Carter does not say if and when he was ever in close contact

with other inmates, prison staff, or contractors who may have exposed him to the virus.  Carter's claims in Count I, therefore, cannot proceed and are DISMISSED, albeit with leave to amend.

## D.     Supervisory Liability

In Count II, Carter alleges that two supervisory officials–that is, the DPS Director and OCCC Warden–violated the Eighth Amendment by "fail[ing] to implement a successful isolation plan to keep inmates from catching the COVID-19 virus."  ECF No. 1 at 6.

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  "A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks and citations omitted).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have

known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted).

"Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted). A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Here, Carter has not plausibly alleged an Eighth Amendment claim against either the DPS Director or the OCCC Warden. Carter's conclusory statement that these Defendants "fail[ed] to implement a successful isolation plan to keep inmates from catching the COVID-19 virus" is not enough. *See Benitez v. Sierra Conservation Ctr., Warden*, Case No. 1:21-cv-00370-BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), *report and recommendation adopted*, Case No. 1:21-cv-00370-BAM (PC), 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) ("[I]n order to state a cognizable Eighth Amendment claim against the warden . . .

9

Plaintiff must provide more than generalized allegations that the warden . . . [has] not done enough regarding control[ling] the spread [of the COVID-19 virus]."); *Kersh v. Gastelo*, Case No. 2:21-cv-01921-CAS-JDE, 2022 WL 1037754, at *4 (C.D. Cal. Feb. 28, 2022) ("To state a cognizable Eighth Amendment claim regarding COVID-19 prison conditions, a complaint must contain more than generalized allegations that a warden has not done enough to enforce six-feet social and living distancing to control the spread of COVID-19."), *report and recommendation adopted sub nom. Kersh v. Gastello*, Case No. 2:21-cv-01921-CAS-JDE , 2022 WL 1032389 (C.D. Cal. Apr. 6, 2022).  Carter's claims in Count II are therefore DISMISSED, again with leave to amend.  To the extent Carter wants to pursue any Eighth Amendment claims based on the conditions of his confinement, he should consider the following legal standards.

**E.  Eighth Amendment**

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 67 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter,

and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (citations omitted).

In general, a prison official violates the Eighth Amendment only when two requirements are satisfied: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the official must have acted with "deliberate indifference" to inmate health or safety. *Id.* at 834 (citations omitted). In order to be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Deliberate indifference" requires more than negligence but does not require purpose or knowledge. *See id.* at 836. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

## F.    First Amendment

In Count III, Carter alleges that his First Amendment rights were violated by unnamed "grievance officers" who failed to investigate his "valid excuse" for not submitting a timely grievance. ECF No. 1 at 7.

"It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted); *see also Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) ("Of fundamental import to prisoners are their First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts." (internal quotation marks, alterations, and citations omitted)).  The Ninth Circuit has stated that "[t]he most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.'" *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting *Rhodes*, 408 F.3d at 567) (second alteration in original)).

Here, Carter fails to state a First Amendment claim because he does not allege that any Defendant deprived him of either his ability to file a grievance or his right to access the court.  To the extent Carter alleges that unnamed "grievance officers" should have investigated his "valid excuse" regarding the submission date of his grievance, it is well settled that prisoners have no right to a "specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").  Thus, any allegation that a prison

official should have done more to investigate Carter's "valid excuse" is insufficient to state a First Amendment claim. *See Cummer v. Tilton*, 465 F. App'x 598, 599 (9th Cir. 2012) ("The district court properly dismissed [prisoner's] claims arising from the processing of his grievances because prisoners do not have a separate constitutional entitlement to a specific prison grievance procedure." (internal quotation mark and citation omitted)).

Regarding Carter's suggestion that "Officer K. Lopes" informed him of the unavailability of grievance forms, *see* ECF No. 1 at 7, Officer Lopes is not named as a Defendant in this lawsuit. Moreover, it is unclear whether Carter is alleging that Officer Lopes lied about the unavailability of grievance forms, Officer Lopes refused to replenish the supply of grievance forms, or something else. It is also unclear if Carter explained to Officer Lopes why he wanted a grievance form. Before any First Amendment claim can proceed, Carter must plausibly allege that a Defendant interfered with a grievance that Carter wished to make. *See Howell v. Lindquist*, No. 2:19-CV-0612-DMC-P, 2019 WL 2491182, at *2 (E.D. Cal. June 14, 2019) ("[I]interference with the grievance process may, in certain circumstances, implicate the First Amendment."); *Gouveia v. Jackie M.*, Civil No. 20-00342 JAO-RT, 2021 WL 900553, at *5–6 (D. Haw. Mar. 9, 2021) (allowing First Amendment claim to proceed where prison official refused to provide grievance form after inmate told prison official that he wanted to complain about a

denial of medical care).  Carter's First Amendment claim is DISMISSED with leave to amend.

## G.    Fourteenth Amendment

At various points in the Complaint, Carter refers to "equal protection."  *See* ECF No. 1 at 2, 5–6.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of laws."  U.S. Const. amend XIV, § 1. To state an equal protection claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendants "acted with an intent or purpose to discriminate against [him] based upon membership in a protected class."  *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020) (internal citations omitted).  Alternatively, a plaintiff may state an equal protection claim in some circumstances by alleging that he "has been irrationally singled out as a so-called 'class of one.'"  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citations omitted).

Here, Carter fails to allege any facts suggesting that a Defendant purposely discriminated against him on account of his membership in a protected class.  Nor has Carter plausibly alleged that any Defendant irrationally treated him differently than a similarly situated individual.  *See SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) ("We join our sister circuits in holding that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material

respects.").  Any equal protection claims are therefore DISMISSED with leave to amend.

## H.    Doe Defendants

As a final matter, the Court notes that Carter has not identified any Defendant by name.  *See* ECF No. 1 at 1–3.

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action.  As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint or amended complaint upon an unknown or anonymous defendant.  The use of doe defendants is therefore generally disfavored in federal court.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

If the names of individual defendants are unknown at the time a complaint is filed, a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must still allege facts to support how each particular doe defendant violated the plaintiff's constitutional rights.  If Carter is able to cure the deficiencies in his claims, he may use the discovery processes for a limited period set by the Court to obtain the names of doe defendants whom he believes violated his constitutional rights and seek leave to amend to name those defendants once identified, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.  *Wakefield v.*

*Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642 (9th Cir. 1980)).

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with partial leave to amend.  Carter must file any amended pleading on or before June 16, 2023.  Carter may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint.  Claims that do not properly relate to those in the Complaint are subject to dismissal.

Carter must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

## V.  28 U.S.C. § 1915(g)

If Carter fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, as described above, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

(2) Carter must file any amended pleading on or before June 16, 2023.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Carter may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Carter may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Carter a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: May 25, 2023 at Honolulu, Hawai'i.



/s/ Derrick K. Watson

Derrick K. Watson
Chief United States District Judge

---

*Carter v. Prison Director*; Civil No. 23-00204 DKW-RT; **ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH PARTIAL LEAVE TO AMEND**