IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAMUEL CARTER, #A0247045,<br><br>        Plaintiff,<br><br>   vs.<br><br>PRISON DIRECTOR, *et al.*,<br><br>        Defendants. | CIVIL NO. 23-00204 DKW-RT<br><br>ORDER DISMISSING SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT AND ACTION |

Before the Court is pro se Plaintiff Samuel Carter's Second Amended Prisoner Civil Rights Complaint ("SAC") brought pursuant to 42 U.S.C. § 1983.[1] ECF No. 9. Carter alleges that Defendants violated his Eighth Amendment rights by housing him at the Oahu Community Correctional Center ("OCCC") with two inmates who should have been in quarantine pursuant to COVID protocols.[2] *Id.* at PageID.80–PageID.81. For the reasons set forth below, the SAC fails to state a claim upon which relief may be granted. The SAC is therefore DISMISSED. *See*

---

[1]Carter is currently incarcerated at the Oahu Community Correctional Center. *See* ECF No. 9 at PageID.76; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0247045"; and select "Search") (last visited Aug. 2, 2023).

[2]Carter names as Defendants the "Prison Director" of the Department of Public Safety ("John Doe 1"), the warden of the OCCC ("John Doe 2"), and two other unnamed correctional officers ("John Doe 3" and "John Doe 4"). ECF No. 9 at PageID.76–PageID.77.

28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1). Because giving Carter a fourth opportunity to state a colorable claim for relief would be futile, this dismissal is without leave to amend. This dismissal may count as a strike under 28 U.S.C. § 1915(g).

I. **STATUTORY SCREENING**

The Court must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis. 28 U.S.C. §§ 1915(e)(2), 1915A(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007) ("Among other reforms, the [Prison Litigation Reform Act of 1995] mandates early judicial screening of prisoner complaints."). During this screening, the Court must dismiss any complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Harris v. Mangum*, 863 F.3d 1133, 1137 (9th Cir. 2017); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.   BACKGROUND[3]

On or about September 19, 2022, two inmates moved into an OCCC cell that Carter had been sharing with one other inmate. *Id.* at PageID.81. According to Carter, the new cellmates moved in four days before each of their COVID-quarantine periods had ended. *Id.* One of the new cellmates slept on the floor in front of Carter's bed and coughed "all the time." *Id.* At some point, Carter and his three cellmates were quarantined and tested positive for COVID. *Id.*

---

[3]Carter's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

3

Carter signed the original Complaint on April 28, 2023. ECF No. 1 at PageID.8. In that pleading, Carter alleged, among other things, that prison officials violated his Eighth Amendment rights by housing him with two inmates who should have been quarantined. *Id.* at PageID.5–PageID.6.

On May 25, 2023, the Court dismissed the Complaint with partial leave to amend. ECF No. 4. The Court explained that Carter had not plausibly alleged that moving the two inmates into his cell was the actual cause of his COVID infection. *Id*. at PageID.33. The Court further explained that Carter could not pursue any claims against the DPS Director and OCCC Warden solely on account of their supervisory positions. *Id.* at PageID.34 –PageID.36.

The Court received Carter's First Amended Complaint ("FAC") on June 7, 2023. ECF No. 5. In the FAC, Carter alleged, among other things, that the DPS Director and OCCC Warden violated the Eighth Amendment by not doing enough "to enforce six feet social and living distancing to control the spread of COVID-19 virus." *Id.* at PageID.49. Carter also alleged that two other unnamed prison officials violated his Eighth Amendment rights, but he did not say how. *Id.* at PageID.50.

On June 23, 2023, the Court dismissed the FAC with leave to amend. ECF No. 8. The Court again explained that Carter could not pursue any claims against the DPS Director and OCCC warden because of their supervisory positions. *Id*. at

PageID.65–PageID.67.  The Court also explained that Carter did not link either of the other unnamed prison officials to the complained-of conduct.  *Id.* at PageID.67–PageID.69.

The Court received the SAC on July 20, 2023.  ECF No. 9.  Carter again alleges that the DPS Director, OCCC warden, and two other unnamed prison officials violated his Eighth Amendment rights because he contracted COVID after two inmates moved into his cell.  *Id.* at PageID.80–PageID.81.  Carter seeks $700,000 in damages.  *Id.* at PageID.83.

### III.   DISCUSSION

**A.   Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'"  *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

## B. Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (citations omitted).

In general, a prison official violates the Eighth Amendment only when two requirements are satisfied: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the official must have acted with "deliberate indifference" to inmate health or safety. *Id.* at 834 (citations omitted). To be "sufficiently serious," "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Additionally, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Although COVID can pose a substantial risk of serious harm, *see Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."), Carter has not plausibly alleged that any Defendant acted with deliberate indifference to his health or safety.

1. **DPS Director and OCCC Warden**

In Count I, Carter alleges that the DPS Director and OCCC Warden violated the Eighth Amendment by "fail[ing] to implement a successful isolation plan," "not train[ing] [their] officers enough," and "not [doing] enough to enforce six-feet social and living distancing to control the spread of [the] virus." ECF No. 9 at PageID.80.

To state a cognizable Eighth Amendment claim, however, Carter must provide more than generalized allegations that the DPS Director and OCCC Warden did not follow COVID-19 protocols and did not do enough to enforce six-feet social and living distancing. *See Victory v. Allison*, Case No. 1:22-cv-01118-JLT-SAB (PC), 2023 WL 3824827, at *7 (E.D. Cal. June 5, 2023) ("[I]n order to state a cognizable Eighth Amendment claim against the warden, . . . Plaintiff must provide more than generalized allegations that the

warden and other defendants have not done enough regarding overcrowding or prison movement or housing assignment to control the spread [of COVID].""). "[M]erely alleging these Defendants are required to implement procedures, policies and operations . . . to protect inmates from exposure to COVID-19 without allegations that they knew of and deliberately disregarded such a risk in Plaintiff's individual case fails to state an Eighth Amendment deliberate indifference claim against them." *Victory*, 2023 WL 3824827, at *8.

Carter does not allege that he complained to the DPS Director or the OCCC Warden about the inmates moving into his cell, what he said to them, or how they responded. The fact that Carter tested positive for COVID after two inmates moved into his cell, without more, does not demonstrate deliberate indifference on the part of the DPS Director or OCCC Warden. *Id.* Likewise, Carter's allegation that the DPS Director and OCCC Warden "should have known of the risk of inmates catching the COVID-19 virus," ECF No. 9 at PageID.80, is not enough to state a claim. *See Peacock v. Horowitz*, No. 2:13-cv-02506 TLN AC P, 2015 WL 692124, at *2 (E.D. Cal. Feb. 18, 2015) ("It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk."), *report and recommendation adopted*, No. 2:13-cv-2506 TLN AC P, 2015 WL 1520477 (E.D. Cal. Mar. 31, 2015)

8

In short, Carter's various conclusory statements are insufficient to state an Eighth Amendment claim.[4]  *See also Benitez v. Sierra Conservation Ctr., Warden*, Case No. 1:21-cv-00370-BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) ("[I]n order to state a cognizable Eighth Amendment claim against the warden . . . , Plaintiff must provide more than generalized allegations that the warden . . .[has] not done enough regarding control[ling] the spread [of the COVID-19 virus]."), *report and recommendation adopted*, Case No. 1:21-cv-00370-BAM (PC), 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021); *Kersh v. Gastelo*, Case No. 2:21-cv-01921-CAS-JDE, 2022 WL 1037754, at *4 (C.D. Cal. Feb. 28, 2022) ("To state a cognizable Eighth Amendment claim regarding COVID-19 prison conditions, a complaint must contain more than generalized allegations that a warden has not done enough to enforce six-feet social and living distancing to control the spread of COVID-19."), *report and recommendation adopted sub nom. Kersh v. Gastello*, Case No. 2:21-cv-01921-CAS-JDE , 2022 WL 1032389 (C.D. Cal. Apr. 6, 2022).  Carter's claims in Count I are therefore DISMISSED without leave to amend.

---

[4]Carter's reliance on an order granting in part and denying in part a motion for a preliminary injunction and temporary restraining order in *Chatman v. Otani*, Civ. No. 21-00268 JAO-KJM (D. Haw.), is misplaced.  That case settled and was dismissed with prejudice on November 10, 2021—that is, long before the events described in the SAC.  Thus, the order issued in *Chatman* has no bearing on this case.

### 2. John Doe 3 and John Doe 4

In Count II, Carter alleges that two other unnamed prison officials violated his Eighth Amendment rights by moving the two inmates into his cell. ECF No. 9 at PageID.81.

Carter similarly has not plausibly alleged that the two unnamed prison officials were deliberately indifferent to his safety. For example, Carter does not allege that he complained to John Doe 3 or John Doe 4 about the new inmates being moved into his cell, what he said in doing so, or what he was told in response. Carter also does not allege that John Doe 3 or John Doe 4 otherwise knew that the new inmates had not completed their full quarantine period or that one of the inmates was showing symptoms of being ill. To the extent Carter is alleging that these prison officials were negligent in moving the inmates into his cell, that is not enough. *See Victory*, 2023 WL 3824827, at *8 ("Plaintiff's allegations amount to potential negligence, at most, which is not sufficient to give rise to a claim for relief."). In short, Carter has not plausibly alleged that John Doe 3 or John Doe 4 knew of and disregarded an excessive risk to his health or safety. Carter's claims against John Doe 3 and John Doe 4 are, therefore, DISMISSED without leave to amend.

## IV.   28 U.S.C. § 1915(g)

Carter is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## V.   CONCLUSION

(1) The Second Amended Complaint, ECF No. 9, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Because Carter has had three opportunities to state a plausible claim for relief and has been unable to do so and granting further leave to amend would be futile, the Second Amended Complaint is DISMISSED without leave to amend, and this dismissal may constitute a strike under 28 U.S.C. § 1915(g).

(3) The court CERTIFIES that an appeal from this Order would be frivolous and, therefore, not taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir.1977) (stating that indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

(4) The Clerk is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: August 3, 2023 at Honolulu, Hawaiʻi.



/s/ Derrick K. Watson

Derrick K. Watson
Chief United States District Judge

*Carter v. Prison Director*; Civil No. 23-00204 DKW-RT; **ORDER DISMISSING SECOND AMENDED PRISONER CIVIL RIGHTS COMPLAINT AND ACTION**